**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **LISA R. STALLWORTH,** | ) | |
| | ) | **PUBLISH** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION 07-0341-WS-B** |
| | ) | |
| **TARA BETTS HOLLINGER,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**ORDER**

This removed action is before the Court on *sua sponte* inquiry as to the presence of federal jurisdiction.  On May 15, 2007, the undersigned entered a Show Cause Order (doc. 4) articulating concerns that removal jurisdiction did not appear to lie here, and directing the Government to show cause why this case should not be remanded to the Circuit Court of Monroe County, Alabama, for want of federal jurisdiction.  On May 17, 2007, the Government filed its Response to Order to Show Cause (doc. 5).  The jurisdictional question is now ripe for disposition.

**I.      Background.**

In September 2006, plaintiff Lisa R. Stallworth brought this action in Monroe County Circuit Court alleging causes of action for slander/libel and conspiracy against named defendants Tara Betts Hollinger and Glenda Hassan.  The gravamen of the Complaint was Stallworth's contention that Hollinger and Hassan had conspired to broadcast, and had actually broadcasted, maliciously false information in an attempt to damage Stallworth's name and bring about the termination of her employment at the Monroe Education Employees Federal Credit Union.  Several weeks later, the Government removed the case to federal court on the grounds that Hassan is a District Examiner of the National Credit Union Administration, and that she is therefore an officer or person acting under an officer of the United States sued in an individual capacity for an act under color of office, giving rise to removal jurisdiction under 28 U.S.C. § 1442(a)(1).  Upon removal, the case was styled *Lisa R. Stallworth v. Tara Betts Hollinger and*

*Glenda Hassan*, Civil No. 06-0696-BH-M.  On November 21, 2006, Senior Judge Hand dismissed all of Stallworth's claims against Hassan and remanded her state-law claims against Hollinger back to Monroe County Circuit Court.[1]

Stallworth's claims against Hollinger proceeded in state court until May 1, 2007, when Stallworth served a Notice of Deposition and Subpoena on Hassan, setting her deposition for June 7, 2007.  (*See* doc. 1, at Exhs. C & D.)  By this point, of course, Hassan was no longer a party to these proceedings, and there are no claims or causes of action of any kind pending against her.  Nothing in the Notice of Deposition or Subpoena suggests that Stallworth was subpoenaing Hassan for anything other than an ordinary non-party deposition.  Nonetheless, the Subpoena includes a statement that "YOU ARE ORDERED TO APPEAR before the court as stated below unless otherwise excused.  Failure to obey this subpoena may be deemed a contempt of court from which the subpoena was issued."  (Doc. 1, at Exh. D.)  The Subpoena includes the stamped signature of John M. Sawyer, Clerk of Court of Monroe County Circuit Court.

There is no indication that Hassan has ever attempted to quash the subpoena in state court or that the state court has commenced or threatened to commence contempt proceedings against her.  Rather, this case has progressed no further than the issuance and service of the subpoena and deposition notice on Hassan.  Without further ado, on May 14, 2007, the Government filed a Notice of Removal (doc. 1), removing this action to this District Court a second time.  The Government predicates removal jurisdiction exclusively on 28 U.S.C. § 1442(a)(1), which creates a right of removal in a "civil action or criminal prosecution commenced in a State court against ... [t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office ...."  *Id.*  The Government's position is that the mere service of a notice of deposition and subpoena on Hassan, without more, activates the

---

[1]     Judge Hand reasoned that Hassan could not be sued in her individual capacity because she was acting within the scope of her employment, that Stallworth's claims against Hassan were therefore properly viewed as claims against the United States subject to the Federal Tort Claims Act, and that Stallworth had failed to exhaust her administrative remedies or show that the Government had waived sovereign immunity with respect to those causes of action.

Government's right to remove this action to federal court pursuant to § 1442(a). Concurrently with its Notice of Removal, the Government filed a Motion to Quash (doc. 2) in this District Court, with accompanying memorandum of law.

## II.     Analysis.

The sole legal question pertaining to jurisdiction is whether the deposition notice and subpoena served on Hassan constitute a "civil action or criminal prosecution commenced in a State court against ... [t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof." 28 U.S.C. § 1442(a)(1). A number of federal decisions resoundingly answer this question in the negative. For example, in *State of Indiana v. Adams*, 892 F. Supp. 1101 (S.D. Ind. 1995), the court held that subpoenas issued to two FBI technicians by a state trial court "constitute nothing more than a demand that they provide the requested testimony. The trial court has taken no action directed toward compelling the testimony sought. Consequently, there has been no action 'commenced' against [the two FBI technicians] which may be removed to this court under 28 U.S.C. § 1442(a)(1)." *Id.* at 1107.

Similarly, in *State of Alabama v. Stephens*, 876 F. Supp. 263 (M.D. Ala. 1995), the Government removed an action from state court under § 1442(a)(1) after defense counsel served a subpoena on an employee of the U.S. Department of Veterans Affairs. Judge Albritton held "that removal of the matter of enforcement of a subpoena to [the VA employee] is premature, that this court does not have jurisdiction at this time under 28 U.S.C. § 1442(a)(1), and that this court is without authority to quash a subpoena issued by the state court." *Id.* at 264. Citing principles of federal judicial restraint in matters involving state court proceedings, the *Stephens* court explained that the Government's removal of the action was precipitous and premature because the court could assume neither that the VA would not allow its employee to testify in state court, nor that the state court would attempt to impose sanctions on the VA employee for obeying his federal employer's instructions under valid agency regulations. According to *Stephens*, the appropriate time to invoke federal jurisdiction under § 1442(a)(1) is the point at which contempt proceedings are initiated against the federal employee by the state court, and the Government's removal before such developments occurred amounted to an impermissible "short-cut" upsetting the "delicate balance between federal and state jurisdiction

encompassed in the concept of federalism." *Id.* at 264-65; *see also Dunne v. Hunt*, 2006 WL 1371445, *4 (N.D. Ill. May 16, 2006) ("It makes sense that serving a subpoena on a federal official, without more, does not trigger the right of removal ... because it is not at all unusual that a litigant may make a discovery request and never follow through on the request.") (internal citations and quotations omitted); *see generally State of Florida v. Cohen*, 887 F.2d 1451, 1454 (11th Cir. 1989) ("Once the state court initiated contempt proceedings against the federal officials [for not responding to state court subpoenas], removal of the contempt proceedings was appropriate" under § 1442(a)(1)).

The *Stephens / Adams* approach is reinforced by *Murray v. Murray*, 621 F.2d 103 (5th Cir. 1980), which is binding precedent in this Circuit. *See, e.g., Loftin v. Rush*, 767 F.2d 800, 804 (11th Cir. 1985) (expressly recognizing *Murray* as binding precedent).[2]  The *Murray* court explained as follows:

> "When applied in light of its underlying purpose, § 1442(a)(1) permits the removal of those actions commenced in state court that expose a federal official to potential civil liability or criminal penalty for an act performed in the past under color of office. ... It similarly permits the removal of civil actions that seek to enjoin a federal officer from performing such acts in the future. ... This action does neither. ... The United States, whose substantive obligation is unchanged by the summons in garnishment, is but a stakeholder in this action.  We do not perceive, and the government does not identify, how the pendency and disposition of the garnishment action in state court could arrest, restrict, impair, or interfere with either the actions of a federal official or the operations of the federal government.  The summons in garnishment falls beyond the scope of protection afforded by § 1442(a)(1) and was improperly removed to the district court."

*Murray*, 621 F.2d at 107; *see also Hexamer v. Foreness*, 981 F.2d 821, 823-24 (5th Cir. 1993) (following and applying *Murray* to a Postal Service garnishment action, and finding no federal jurisdiction because the Postal Service was only a stakeholder, as to whom the suit could not restrict, impede, impair or interfere with its performance of federal duties).  Applied to the circumstances of this case, the *Murray* rationale weighs heavily against jurisdiction.  The service

---

[2]    To be sure, *Murray* concerns the removal of a garnishment proceeding rather than a subpoena enforcement proceeding; however, the Government's own brief in this case tacitly acknowledges its analogous posture by citing garnishment cases in support of its position that mere service of subpoenas satisfies the § 1442(a) jurisdictional prerequisites.

of a subpoena and notice of deposition on Hassan does not, by itself, expose her to potential civil liability or criminal penalty for acts performed in the past under color of office, nor does it seek to enjoin her from performing such acts henceforth.  Without more, the service of the subpoena and deposition notice does not and cannot arrest, restrict, impair or interfere with Hassan's actions as a federal official or the operations of the federal government.  Accordingly, following *Murray*'s exposition of the scope of § 1442(a)(1), no federal jurisdiction can attach under that statute to this case in its present posture.[3]

In its response to the Show Cause Order, the Government points to *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408 (D.C. Cir. 1995), wherein the court did in fact find that the service of a subpoena on a federal officer, without more, gives rise to § 1442(a) removal jurisdiction.  The *Brown & Williamson* court rejected the *Stephens / Adams* line of reasoning, finding no reason "why Congress would have wished [state/federal] confrontation to be actually ignited before removal."  *Id.* at 415.  This Court declines to follow *Brown & Williamson* for three reasons.  First, *Brown & Williamson* construed § 1442(a) far more broadly than did the former Fifth Circuit in *Murray*.  Whereas *Murray* limited the statute's reach to situations where the state court action either exposed the federal official to potential civil liability or criminal penalty for official acts performed in the past or sought to enjoin said official from performing such acts in the future, *Brown & Williamson* would read § 1442(a) as authorizing removal of any proceeding in which state judicial civil power might someday be invoked against a federal official, even if no present, live confrontation exists.

Second, the result in *Brown & Williamson* rested in large part on the panel's belief that "Once the subpoena is issued, a clash between state power and the federal official appears to be

---

[3]       The Government's brief does not mention *Murray*, but instead urges the Court to follow the competing approach embraced by the Ninth Circuit.  In *Nationwide Investors v. Miller*, 793 F.2d 1044 (9th Cir. 1986), the court found that state court garnishment proceedings are civil actions within the meaning of § 1442(a)(1) and therefore removable.  In doing so, however, *Nationwide* sharply criticized the old Fifth Circuit's *Murray* decision, characterizing it as "worse than an empty gesture."  793 F.2d at 1047.  The problem for the Government, of course, is that this Court is bound by *Murray*, not *Nationwide*.  Given the prominent denunciation of *Murray* in *Nationwide*, the Government's citation to the latter without mentioning that it runs counter to the binding precedent represented by the former is puzzling.

naturally inevitable." *Id.* at 415.  In the undersigned's experience, such an assumption of inevitability is inconsistent with the practical realities.  As several district courts have pointed out in the cases cited *supra*, issuance of a subpoena to a federal official is not a guarantee of confrontation between state power and that official.  To the contrary, the threat of conflict may be averted in any number of ways.  The Government could opt to allow Hassan to testify at her deposition, perhaps with the proviso that she not reveal sensitive financial information of the sort emphasized in the Government's Motion to Quash.  Even if the Government refused to allow Hassan to testify, Stallworth could reconsider the wisdom of the subpoena and opt not to attempt to enforce the subpoena against Hassan in state court, particularly when the subpoena may not comply with the procedures outlined in 12 C.F.R. § 792.42, of which the Government apparently failed to advise Stallworth's attorney until the very date of removal of this action.[4]  Even if the Government refused to allow Hassan to testify and even if Stallworth pushed forward with subpoena enforcement proceedings in state court, the Monroe County Circuit Court could certainly decide to quash the subpoena or could find that it is not appropriate to consider sanctions against Hassan for obeying lawful instructions of her employer (the National Credit Union Administration, a federal agency) based on valid regulations in refusing to comply with the subpoena.  Under the circumstances, the institution of contempt proceedings against Hassan by the state court appears unlikely, even if the Government refuses to allow her to testify and even if Stallworth refuses to back down or revise her approach.  Only if all of these highly uncertain contingencies came to pass could such a clash between state power and federal official come to fruition, the federal official reasonably require protection from the potentially hostile state court, and the underlying purposes of § 1442(a) favor removal.

Hence, the *Brown & Williamson* approach endorses removal under § 1442(a) at the point where the state/federal conflict that is the *raison d'etre* of the statute is nothing more than a remote, speculative possibility.  The result of that approach is that federal courts would intermeddle in state court actions to protect interests and prevent conflicts that have not

---

[4]      Indeed, it seems altogether possible that, newly informed of the NCUA's regulations, Stallworth may withdraw the subpoena and renew the subpoena process using proper regulatory procedures, as identified by the Government.

materialized and may never form, effectively trampling the delicate balance between federal and state jurisdiction in which notions of federalism are firmly rooted.[5]

  Third, several other aspects of *Brown & Williamson* undermine confidence in its holding. That court essentially acknowledged that it was acting alone among the circuit courts in interpreting § 1442(a) in this manner in this context, inasmuch as appellate authorities were split on application of § 1442(a) to garnishment proceedings, and the only previous appellate case finding that removal is available to assert a federal privilege against a subpoena had been premised on an idiosyncratic quirk of state law.  Moreover, the *Brown & Williamson* court fairly admitted the weaknesses in its own reasoning that a subpoena enforcement proceeding qualified as a civil action for § 1442(a) purposes, stating: "Admittedly, a civil contempt proceeding is closer in nature to a civil action than is a subpoena enforcement proceeding.  And at the point of contempt ... a federal official's action is called into question – which is not really true at the earlier stage."  62 F.3d at 414.  Finally, by focusing on the "civil action" language of § 1442(a), *Brown & Williamson* largely ignored the "commenced in a State court" clause in the statute, never explaining how the mere possibility of future conflict between a federal official and state judicial civil power can be fairly deemed to have "commenced" a civil action against the official.  For all of these reasons, the Court declines to adopt the unduly expansive construction of § 1442(a) utilized in *Brown & Williamson*.

  Equally unpersuasive is the Government's attempt to analogize this case to *State of Louisiana v. Sparks*, 978 F.2d 226 (5th Cir. 1992), wherein the new Fifth Circuit construed § 1442(a) to allow removal in a subpoena enforcement case arising from "a peculiarity of

---

  [5]  The Government challenges this reasoning, which was adopted by the Middle District of Alabama in *Stephens*, by questioning whether it would not be "less intrusive to 'nip the matter in the bud,' before placing the issue before the state judge and then removing it?" (Government Brief (doc. 5) at 4.)  The answer is no.  The Government's "nipping the bud" approach would be vastly overinclusive, resulting in the removal of – and federal court interference in – numerous state court actions in which only the mere possibility of conflict existed.  It is far more prudent, and far more respectful of the state courts' authority, to refrain from intruding on state court proceedings under the guise of § 1442(a)(1) until and unless a development occurs in state court that requires the protection of a federal forum to safeguard the interest of national supremacy from the interference of hostile state courts.  That development has not happened yet, and may well never happen, in the case at bar.

Louisiana law, which provides for no meaningful delay between a party or witness' refusal to comply with a subpoena and the state court's right to hold the party or witness in contempt." *Id.* at 232.  Because Louisiana law provided that the federal official's failure to respond to the subpoena could result in an immediate contempt citation, issued without notice, without warning and without an opportunity to be heard, the *Sparks* court reasoned, "we believe that the mere issuance of a Louisiana state court subpoena to a federal officer ... triggers § 1442(a)." *Id.* at 232-33.[6]

   According to the Government, the risk that the Monroe County Circuit Court could invoke the summary contempt proceedings of Rule 70A(b), Ala.R.Civ.P., favors removal now, in the interests of caution, as in *Sparks*.  (Government Brief, at 5.)  The Government's stated concern that Hassan could be held in contempt in Alabama state court summarily for failing to comply with the subpoena is illusory.  To be sure, the Alabama Rules of Civil Procedure do authorize a state court judge to "summarily find in contempt any person who commits a direct contempt."  Rule 70A(b)(1), Ala.R.Civ.P.  But "direct contempt" is defined as "disorderly or insolent behavior or other misconduct committed in open court, in the presence of the judge, that disturbs the court's business ... where immediate action is essential to prevent diminution of the court's dignity and authority before the public."  Rule 70A(a)(2)(A), Ala.R.Civ.P.  The Government fails to explain how the conduct contemplated by Hassan here (namely, failing to comply with a subpoena and notice of deposition on the direct instructions of her federal employer) could possibly even approach "direct contempt," so as to authorize summary contempt proceedings.  Even if it could, Rule 70A would still require the state court judge to give Hassan "a reasonable opportunity to present evidence or argument regarding excusing or mitigating circumstances," with no decision on punishment to be announced immediately "unless prompt punishment is imperative to achieve immediate vindication of the court's dignity

---

   [6]  Even in *Sparks*, however, the Government did not immediately remove to federal court upon issuance of the subpoena, but first filed a motion to quash in state court.  The *Sparks* court praised the Government's conduct in that regard as showing "genuine concern for federal-state comity ... in keeping with well-settled judicial policy."  978 F.2d at 233 n.11.  Here, by contrast, the Government never filed a motion to quash in state court, but instead removed the case to federal court without first seeking any redress from the state court.

and authority." Rule 70A(b)(2). Clearly, then, the Rule 70A summary contempt proceeding under Alabama law differs from the Louisiana procedure at issue in *Sparks*, and does not raise the specter that the Monroe County Circuit Court could cite and punish Hassan for contempt without notice, a reasonable opportunity to be heard, or a time lag in which to remove this proceeding to federal court under the authority of § 1442(a). *Sparks* is therefore inapposite.

**III.   Conclusion.**

For all of the foregoing reasons, the Court finds that the Government's removal of this action from state court upon service of a subpoena on Hassan was premature and beyond the scope of 28 U.S.C. § 1442(a)(1). The issuance of a subpoena to Hassan, without more, did not expose her to potential civil liability or criminal penalty for an act performed under color of office. It did not seek to enjoin her from performing such acts in the future. Any subpoena enforcement proceedings that may occur in state court could not arrest, restrict, impair, or interfere with either Hassan's actions in her official capacity or the operations of the federal government, unless and until such subpoena enforcement proceedings blossom into contempt proceedings. The initiation of contempt proceedings against Hassan in Monroe County Circuit Court is highly speculative at this juncture, and hinges on a series of contingencies by different actors that may or may not come to pass. To construe § 1442(a) to authorize removal in such circumstances would be excessively to tinker with state court proceedings based on a mere whisper of a chance that some confrontation may occur between the state court and the federal official at some future date. The statutory language, the binding precedent of *Murray*, and bedrock notions of federalism all counsel strongly against such needless interference. If circumstances play out in state court to the point where Hassan is facing contempt proceedings for failure to comply with a subpoena that the state court has refused to quash, then removal will absolutely be proper under § 1442(a) and *Cohen*. For now, however, the Court finds that removal was improper and that jurisdiction does not lie. Accordingly, this action is **remanded** to the Circuit Court of Monroe County, Alabama for further proceedings.

DONE and ORDERED this 24th day of May, 2007.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE